<u>**NOT FOR PUBLICATION**</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANKIE TELLES, <br><br> Plaintiff, <br><br> v. <br><br> OFFC. J. BALTIMORE and S.C.P.O.G. FRANCA, <br><br> Defendants. | No. 21cv0464 (EP) (LDW) <br><br> **OPINION** |

**PADIN, District Judge.**

*Pro se* Plaintiff Frankie Telles filed an Amended Complaint raising an excessive force claim under 42 U.S.C. § 1983 against Defendants Officers J. Baltimore and G. Franca, who purportedly assaulted Plaintiff while he was detained in Northern State Prison ("NSP"). D.E. 6 ("Am. Compl." or "Amended Complaint"). Defendants now move for summary judgment. D.E. 79. Plaintiff opposes the motion. D.E. 89; D.E. 95 at 2-11 ("Pl. Certif."). The Court has reviewed the parties' submissions and decides Defendants' motion on the papers. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78.1(b). For the reasons below, the summary judgment motion will be **DENIED**. The Court will also *sua sponte* appoint counsel to represent Plaintiff. 28 U.S.C. § 1915(e)(1).

**I.    BACKGROUND**

**A.    Undisputed Facts**

On June 14, 2020, Plaintiff was incarcerated in NSP's general population. D.E. 79-3 ("DSOF") ¶¶ 1, 4; Pl. Certif. ¶¶ 1-2. Plaintiff argued with his cellmate, Luis Lopez. Pl. Certif. ¶ 2. The argument turned physical. DSOF ¶ 5; Pl. Certif. ¶ 2. During the altercation, Plaintiff pinned Lopez against the cell door. DSOF ¶ 9; Pl. Certif. ¶ 3. NSP Sergeant David Grace

("Sergeant Grace"), who observed the altercation from outside the cell, ordered both inmates to stop fighting. DSOF ¶¶ 8, 10; Pl. Certif. ¶¶ 3-4. Plaintiff and Lopez did not adhere to the order. DSOF ¶ 10; Pl. Certif. ¶¶ 4-6.[1] "OC" spray was deployed on Plaintiff and Lopez. DSOF ¶ 10; Pl. Certif. ¶ 12. Two to five corrections officers entered the cell to break up the fight. DSOF ¶ 11; Pl. Certif. ¶ 8. Thereafter, Plaintiff was taken to NSP's medical unit. DSOF ¶ 14; Pl. Certif. ¶¶ 14-16.

### B.  Plaintiff's Version of Events

At a certain point after Sergeant Grace ordered Plaintiff and Lopez to stop fighting, Plaintiff went to the middle of the cell, got on his knees with his hands behind his back (facing away from the cell door), and waited for the corrections officers to go into the cell and restrain him and Lopez. Pl. Certif. ¶ 7. Officers Shiekh and Rios[2] removed Lopez from the cell. *Id.* ¶ 8. Defendants then entered the cell. *Id.* Baltimore "threw a sidekick," striking Plaintiff in the right eye and kicking him in the back of the head, which caused Plaintiff's head to strike the metal on the bottom bunk bed. *Id.* Defendants took turns kicking Plaintiff in the face and stomping on his head. *Id.* ¶ 9. Plaintiff "tried to curl up into a ball and push myself with [his] feet under the bunk [bed] so [Defendants] couldn't keep kicking [him] in the head, so instead [Defendants] stomped on [Plaintiff's] right shoulder and middle of [his] back." *Id.* Franca pulled Plaintiff's legs to drag him out from under the bunk bed "so Baltimore could keep kicking [Plaintiff] in the head." *Id.*

---

[1] Plaintiff alleges Sergeant Grace gave verbal commands to stop twice. According to Plaintiff, he released Lopez after being ordered to stop fighting the first time. Pl. Certif. ¶ 4. Lopez then hit Plaintiff in the nose twice. *Id.* Plaintiff chased Lopez around the cell and hit Lopez twice in the forearms. *Id.* ¶ 5. Lopez began calling for help. *Id.* ¶ 6. Grace gave another verbal command, at which point Plaintiff "went to the middle of the cell and got on [his] knees with [his] hands behind [his] back, and [his] back facing the door of the cell, waiting for the guards to come into the cell and restrain [him] and Lopez." *Id.* ¶ 7.

[2] Not named as parties in this matter.

Defendants kept Plaintiff on his stomach and ordered him to put his hands behind his back, all they while they continued kicking Plaintiff. *Id.* ¶ 10. Plaintiff complied and was handcuffed. *Id.* ¶¶ 10-11. Defendants continued to kick and punch Plaintiff in the face after putting handcuffs on him. *Id.* ¶ 11. Plaintiff began to lose consciousness at this time. *Id.* He recalls smelling "some type of chemical" and being pinned against a fence. *Id.* Plaintiff states he saw video cameras on the housing pod walls. *Id.*

Defendants took Plaintiff into the showers for decontamination. *Id.* ¶ 13. Plaintiff was placed under the water while still handcuffed. *Id.* They punched Plaintiff in the abdomen. *Id.* Defendants then took Plaintiff to the medical unit for examination. *Id.* ¶ 14. Plaintiff states there are numerous cameras in the area. *Id.*

Nurse Jill McNamara examined Plaintiff for injuries. *Id.* ¶¶ 15-16. She documented that Plaintiff had "minor abrasions on back of head, forehead, and left shoulder. Minor lacerations to lower lip with swelling, but no active bleeding." D.E. 95 at 13; *see also* Pl. Certif. ¶ 16.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A fact is material if it might affect the outcome of the case, and a dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nissan World, LLC v. Mkt. Scan Info. Sys.*, 2014 U.S. Dist. LEXIS 59902, at *12 (D.N.J. Apr. 30, 2014) (quoting *Anderson*, 477 U.S. at 248).

Facts and inferences must be construed in the light most favorable to the nonmoving party. *Id.* (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)).

It is the moving party's burden to establish that no genuine dispute of material fact remains. *Celotex Corp.*, 477 U.S. at 322-23. But where the nonmoving party "bears the burden of proof on an issue, 'the burden on the moving party may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case.'" *Nissan World, LLC*, 2014 U.S. Dist. LEXIS 59902, at *12 (quoting *Celotex Corp.*, 477 U.S. at 325).

Once the moving party has met its initial burden, the burden shifts to the nonmoving party to "present actual evidence that creates a genuine issue as to a material fact for trial." *Virginia St. Fidelco, LLC v. Orbis Prods. Corp.*, 2016 U.S. Dist. LEXIS 102641, at *6 (D.N.J. Aug. 3, 2016) (citing *Anderson*, 477 U.S. at 248; Fed. R. Civ. P. 56(c)). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "unsupported allegations . . . and pleadings are insufficient to repel summary judgment," *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). Finally, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to [its] case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

**III.   ANALYSIS**

Defendants move for summary judgment with respect to Plaintiff's excessive force claim against them. In support of their motion, Defendants raise two primary arguments: (1) because

4

there is no sufficient factual basis for Plaintiff's excessive force claim against Franca, summary judgment in Franca's favor is warranted, and (2) because the evidence indicates Defendants' use of force was reasonable, Defendants are entitled to summary judgment. D.E. 79-1 ("Mot.") at 6. With respect to the second argument, Defendants characterize the force used as reasonable to restore order following Plaintiff and Lopez's altercation, *id.* at 8-14; and the force used was not used for a malicious or sadistic purpose, *id.* 14-15. Lastly, because no law clearly establishes that using physical force for less than one minute on a prisoner who is fighting another prisoner, ignoring commands to stop, and continuing to fight despite deploying OC is a constitutional violation, Defendants argue they are entitled to qualified immunity. *Id.* at 16-17. Ultimately, the Court finds that material issues of fact preclude granting summary judgment in Defendants' favor.

**A.    There is a Material Issue of Fact as to Franca's Participation**

Franca argues he is entitled to summary judgment because Plaintiff has not established an excessive force claim against him. *Id.* at 4-8. Specifically, Defendant claims "Plaintiff fails to connect [] Franca to the excessive force allegations . . . . Plaintiff's testimony consistently failed to implicate [] Franca's direct involvement in the alleged scuffle. During Plaintiff's deposition, Plaintiff never even discussed [] Franca." *Id.* at 7.

However, Franca has produced an incomplete copy of Plaintiff's deposition. D.E. 79-2 ("Pl. Dep."). Franca has only produced pages 18-19, 23, 30-32, 37, 39, and 45-46. *See id.* Franca cannot assert that Plaintiff "never" testified to a fact and then only produce selective portions of that testimony. *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring the moving party to cite specific materials in the record to support a factual position); Fed. R. Evid. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise.").

On the other hand, Plaintiff has provided evidence that sufficiently raises a material dispute with respect to Franca's involvement. Plaintiff certified under penalty of perjury that Franca "took turns kicking [him] in the face and stomping on his head." Pl. Certif. ¶ 9. He also claimed that Franca pulled him out from under the bed so that Baltimore could kick Plaintiff in the head and kicked him after Plaintiff's hands were restrained. *Id.* ¶¶ 9-11. Finally, Plaintiff certified that Franca punched him in the stomach while Plaintiff was handcuffed in the shower. *Id.* ¶ 13.

Franca argues that the Court should disregard Plaintiff's Certification as a "sham affidavit." D.E. 98 ("Reply") at 5. "A sham affidavit is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). He asserts Plaintiff never identified him as one of the two officers who beat him. Reply at 5-6 ("Plaintiff's testimony consistently failed to implicate Defendant Franca's direct involvement in the alleged scuffle."). As previously noted, Franca did not provide a complete transcript of Plaintiff's deposition, so this assertion is unsupported by the record.

Moreover, "not all contradictory affidavits are necessarily shams." *Jiminez*, 503 F.3d at 254. "When there is independent evidence in the record to bolster an otherwise questionable affidavit, courts generally have refused to disregard the affidavit." *Baer v. Chase*, 392 F.3d 609, 625 (3d Cir. 2004). Portions of Plaintiff's Certification are supported by other evidence in the record. For example, Plaintiff certified that Lopez punched him in the nose twice after Plaintiff released Lopez. Pl. Certif. ¶ 4. He testified to this fact in his deposition. Pl. Dep. 30:12-13. He also testified that Baltimore rushed into the cell and kicked him across the eye. *Id.* 37:20-24. This is consistent with Plaintiff's Certification. Pl. Certif. ¶ 8. Plaintiff's certified statement that he complied with Grace's order to stop fighting is also supported by Grace's preliminary incident

6

report. *Compare* Pl. Certif. ¶ 7 ("[A]fter the Sgt. told us to stop fighting, I went to the middle of the cell and got on my knees with my hands behind my back, and my back facing the door of the cell . . . .") *with* D.E. 95 at 12 ("Preliminary Incident Report") ("Both inmates began to comply with orders and were separated."). The Preliminary Incident Report also confirms that Franca escorted Plaintiff to the showers and medical unit. *See* Preliminary Incident Report. Ultimately, Plaintiff's credibility is a factual issue for the trier of fact, but the Court will not disregard Plaintiff's Certification in connection with the summary judgment motion in light of the other evidence in the record supporting at least some of Plaintiff's assertions.

After considering Plaintiff's Certification and other evidence in the record, the Court finds that there are material issues of fact from which a reasonable trier of fact—if finding Plaintiff credible—could conclude that Franca was personally involved in the use of force against Plaintiff. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 291 (3d Cir. 2018) ("[I]n the face of motion for summary judgment, a [Section] 1983 plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial."). Accordingly, summary judgment will not be granted in Franca's favor on this this ground.

**B.      There is a Material Issue of Fact as to the Use of Force**

Defendants argue that they are entitled to judgment because any use of force was reasonable under the circumstances. Mot. at 8. "Moreover, the record does not support finding that the force used was for a malicious or sadistic purpose." *Id.* The Court concludes there are material issues of fact precluding summary judgment.

"The test for whether a claim of excessive force is constitutionally actionable is 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and

7

sadistically for the very purpose of causing harm.'" *Giles v. Kearney*, 571 F.3d 318, 328 (3d Cir. 2009) (quoting *Whitley v. Alber*, 475 U.S. 312, 319 (1986)).  The relevant factors to consider are:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.*; *see also Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000).  "An express intent to inflict unnecessary pain is not required . . . ."  *Whitley*, 475 U.S. at 319.

There is no dispute that Plaintiff and Lopez were engaged in a physical altercation on June 14, 2020.  DSOF ¶ 5; Pl. Certif. ¶ 2.  There is also no dispute that Plaintiff and Lopez received verbal orders to stop fighting.  DSOF ¶¶ 8, 10; Pl. Certif. ¶¶ 3-4.  But there are material issues of fact as to the rest of the incident.

1. *Need for the application of force*

Defendants have not met their burden of proof with respect to their summary judgment motion.  They argue that Plaintiff and Lopez continued to fight after the verbal command to stop and "verbal commands had proven no use," Mot. at 10, but they have not pointed to any evidence that supports this claim.  In contrast, Plaintiff has pointed to evidence that he complied with the verbal commands before the officers entered his cell.  *See* Pl. Certif. ¶ 7 ("[A]fter the Sgt. told us to stop fighting, I went to the middle of the cell and got on my knees with my hands behind my back, and my back facing the door of the cell . . . .").  And the Preliminary Incident Report also suggests that Plaintiff complied with the officers' verbal commands after the OC spray was used.  *See* Preliminary Incident Report ("OFC Romulus deployed OC when cell door opened to gain compliance.  Both inmates began to comply with orders and were separated.").  Thus, an issue of fact exists with respect to whether Plaintiff complied with the officers' verbal commands before

8

Defendants entered his cell. This factual issue is material; if a reasonable trier of fact finds that Plaintiff was not resisting and was complying with verbal commands, the trier of fact could find that there was no need for the application of force on Plaintiff.

*2. Relationship between the need and the amount of force used*

Accepting Plaintiff's version of events, he was on his knees surrendering to officers when Baltimore kicked him in the head. Pl. Dep. 37:9-18. Defendants took turns kicking Plaintiff and stomping on his head while Plaintiff was on the ground and trying to protect his head. Pl. Certif. ¶ 9. Defendants continued to kick and punch Plaintiff after restraining him, *id.* ¶ 11, and assaulted Plaintiff again in the shower while he was still handcuffed, *id.* ¶ 13. If Plaintiff's version of events are accepted as true, a reasonable trier of fact could conclude that the amount of force used on Plaintiff was unnecessary because Plaintiff was either surrendering, on the ground, or restrained when the force was used against him.

*3. Extent of the injury inflicted*

The extent of Plaintiff's injuries is also disputed. Plaintiff certified that he lost consciousness in his cell while Defendants were kicking him. Pl. Certif. ¶ 11. Additionally, the Preliminary Incident Report notes that Plaintiff had a "bloody lip and scrape on forehead." Preliminary Incident Report. Nurse McNamara also documented that Plaintiff had "minor abrasions on back of head, forehead, and left shoulder. Minor lacerations to lower lip with swelling, but no active bleeding." D.E. 95 at 13. Defendants argue that these injuries are *de minimis* and do not support an excessive force claim. Reply at 7.

"[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Hudson v. McMillian*, 503 U.S. 1, 4 (1992). "The 'core judicial inquiry,' [is] not whether a certain quantum of injury was

9

sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (quoting *Hudson*, 503 U.S. at 7). The extent of the injury is a factor, but "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* at 38.

Here, a reasonable trier of fact could "conclude that [Plaintiff's] injuries were so minor that [Defendants'] account of the incident is more credible than [Plaintiff's], and/or that the force used was not of constitutional dimension . . . . However, that is an issue of fact to be resolved by the fact finder based upon the totality of the evidence; it is not an issue of law a court can decide." *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002). "Regardless of the category of the injury," Plaintiff has pointed to evidence that Defendants used "wanton, unnecessary force" against him, which "creates a disputed issue of material fact for the trier of fact to resolve." *Brooks v. Kyler*, 204 F.3d 102, 109 (3d Cir. 2000).

    4.    *Extent of the threat to the safety of staff and inmates*

Defendants assert there was an active threat to staff and inmate safety due to the fight between Plaintiff and Lopez. Mot. at 12. "Considering the violent fight and the fact that Plaintiff and his cellmate refused to stop fighting despite orders to do so, the Defendants had clear reasons to use force to stop a threat, and to also stop an active injury." *Id.*

But Defendants have not pointed to any evidence in the record that supports the assertion that the fight was ongoing at the time they entered Plaintiff's cell, nor have they provided sworn statements indicating that they believed force was necessary to protect staff and inmates. In contrast, Plaintiff has pointed to evidence that the fight was over before Defendants entered his

10

cell. *See* Pl. Certif. ¶ 7 ("[A]fter the Sgt. told us to stop fighting, I went to the middle of the cell and got on my knees with my hands behind my back, and my back facing the door of the cell . . . ."); Preliminary Incident Report ("OFC Romulus deployed OC when cell door opened to gain compliance. Both inmates began to comply with orders and were separated."). Thus, if a reasonable trier of fact finds Plaintiff's version of events credible, there was no ongoing safety issue warranting the force used against him because the fight between Plaintiff and Lopez was over before Defendants even entered his cell.

       5.   *Any efforts made to temper the severity of a forceful response*

Defendants claim they "attempted to quell the fight using lesser means of force: a verbal order and the deployment of 'OC' spray." Mot. at 12-13. Plaintiff concedes Grace verbally ordered him and Lopez to stop fighting twice. Pl. Certif. ¶¶ 4, 7. He also concedes OC spray was used. *Id.* ¶ 12. This comports with the Preliminary Incident Report's recitation of events. *See* Preliminary Incident Report.

Although the use of verbal commands and OC spray is undisputed, the subsequent events are disputed. The Preliminary Incident Report indicates that "[b]oth inmates began to comply with orders and were separated" after the OC spray was deployed. *Id.* If this is true, there was no need for Defendants to also kick and punch Plaintiff to subdue him. This dispute is material to whether Defendants used excessive force against Plaintiff.

Applying the *Whitley* factors to the evidence in the record, a reasonable trier of fact could conclude that Defendants' use of force was not a good faith effort to maintain or restore discipline using the *Whitley* factors. Therefore, Defendants are not entitled to summary judgment as to Plaintiff's excessive force claim.

    **C.**    **Defendants Are Not Entitled to Qualified Immunity**

Next, Defendants assert that they are entitled to qualified immunity with respect to Plaintiff's excessive force claim. Mot. at 16. "In considering the applicability of qualified immunity, courts engage in a two-pronged examination. First, a court must decide 'whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right.'" *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015) (omission in original) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "And second, the court must determine whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* (cleaned up). "The officers bear the burden of persuasion under each prong." *Anglemeyer v. Ammons*, 92 F.4th 184, 188 (3d Cir. 2024).

Defendants argue "that no law clearly establishes that it was unlawful for [] Baltimore to use force for a total of less than one minute when he was faced with two prisoners who were physically fighting and had ignored verbal commands to stop and the deployment of OC spray" and "no law clearly addresses what level of force is appropriate in response to two prisoners who are fighting each other, ignoring verbal commands, and continuing to fight despite the deployment of OC spray." Mot. at 16-17. But accepting Defendants' argument would require the Court to weigh and decide a material issue of fact, which is inappropriate at the summary judgment stage. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam); *Anglemeyer*, 92 F.4th at 189 (reversing grant of qualified immunity on summary judgment because "the District Court failed to construe the evidence in favor of each plaintiff" and "predominantly credited the officers' version of events"); *Giles*, 571 F.3d at 327 (reversing district court for finding qualified immunity in excessive force case where "such a legal conclusion . . . rests on a factual presumption that is inappropriate on summary judgment").

12

Here, material issues of fact exist as to whether Plaintiff complied with the officers' orders to stop fighting after the OC spray was deployed and whether Plaintiff was resisting Defendants' use of force. These factual issues are outcome-determinative with respect to whether the force used against Plaintiff was excessive. *See, e.g.*, Pl. Certif. ¶ 9 (Plaintiff "tried to curl up into a ball and push myself with [his] feet under the bunk [bed] so [Defendants] couldn't keep kicking [him] in the head, so instead [Defendants] stomped on [Plaintiff's] right shoulder and middle of [his] back"); *see also Giles*, 571 F.3d at 327 n.4 ("The question of whether Giles was fully subdued or not once he was on the ground with Blades sitting on him makes a difference as to whether a reasonable official would have considered the force used reasonable and necessary under the circumstances.").

The Court views the relevant right as the right of an inmate to be free from being kicked and punched by officers after he has stopped his disruptive behavior and has surrendered to officers. Construing the evidence in the light most favorable to Plaintiff, a reasonable trier of fact could find that Defendants violated this right for the reasons discussed *supra* Section III.C. Therefore, Defendants' arguments fail on the first prong of qualified immunity analysis.

"Because the officers have failed on the first prong of the qualified immunity analysis, they are entitled to summary judgment only 'if they can bear the burden of showing, on the second prong, that reasonable officers could not have known that their actions violated clearly established law.'" *Anglemeyer*, 92 F.4th at 191 (quoting *Mack v. Yost*, 63 F.4th 211, 228 (3d Cir. 2023)). The Court "proceed[s] by defining the right allegedly violated with a 'high degree of specificity' and then asking 'whether that right was clearly established at the time of its alleged violation.'" *Id.* (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official

13

would understand that what he is doing is unlawful." *Wesby*, 583 U.S. at 63. "Thus, the central question is whether the existing law gave the officer 'fair warning' that his *particular* conduct was unlawful." *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 196 (3d Cir. 2021) (emphasis in original) (quoting *Schneyder v. Smith*, 653 F.3d 313, 329 (3d Cir. 2011)).

The Court concludes that any reasonable officer would have known that Defendants' actions were unlawful in these particular circumstances, given the evidence in the record supporting Plaintiff's excessive force claim. For example, Plaintiff provides that he knelt on the ground and put his hands behind his back before Defendants entered his cell. Pl. Certif. ¶ 12. But despite Plaintiff's surrender, Plaintiff claims that Baltimore kicked him twice in the head upon entering his cell. *Id.* ¶ 8. Defendants then allegedly took turns kicking Plaintiff in the face and stomping on his head while Plaintiff was on the ground and was not resisting. *Id.* ¶¶ 9-10. According to Plaintiff, he complied with Baltimore's orders to put his hands behind his back and was handcuffed, but Defendants continued to kick and punch him in the face after handcuffing Plaintiff—to the point that Plaintiff lost consciousness. *Id.* ¶¶ 10-11. Defendants allegedly then took Plaintiff to the showers where they continued to punch a still-handcuffed Plaintiff in the abdomen. *Id.* ¶ 13.

A reasonable officer in 2020 would know that kicking an inmate in the head after he surrendered to prison officers, punching him in the stomach and head while he was on the ground, and continuing to kick and punch him after he was handcuffed is unlawful. *See Jacobs*, 8 F.4th at 197 (finding that "the specific conduct here — striking a physically restrained and nonthreatening inmate — was clearly unlawful under the precedent of this Court and our sister circuits" and violated the Fourteenth Amendment as of 2015); *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016) ("We have little difficulty concluding that in 2009, the time of the incident, it was well-

14

established, in sufficiently similar situations, that officers may not 'use gratuitous force against a prisoner who has already been subdued . . . [or] incapacitated'" pursuant to the Eighth Amendment (alteration and omission in original)); *Giles*, 571 F.3d at 326 ("[A]t the time of the incident in 2001, it was established [pursuant to the Eighth Amendment] that an officer may not kick or otherwise use gratuitous force against an inmate who has been subdued."); *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) ("Punching and kicking someone who is handcuffed behind his back . . . is 'repugnant to the conscience of mankind,' absent the extraordinary circumstances necessary to justify that kind of force."). Therefore, it was clearly established in 2020 that it is unlawful for officers to continue to kick and punch an inmate who has stopped his disruptive behavior and has surrendered. Accordingly, Defendants are not entitled to qualified immunity.

D.   **The Interests of Justice Support Appointing Counsel**

A Court may *sua sponte* "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). The Court concludes that the interests of justice and the factors enumerated in *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993), support appointing counsel to represent Plaintiff for the remainder of this matter.

In determining whether to appoint counsel, "the district court must consider as a threshold matter the merits of the plaintiff's claim." *Id.* at 155. The Court will deny Defendants' summary judgment motion, given its conclusion that there are material issues of fact that must be decided by a trier of fact. Therefore, the threshold inquiry is satisfied.

The Court must now consider: (1) Plaintiff's ability to present his own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and Plaintiff's ability to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6)

15

whether Plaintiff can attain and afford counsel on his own behalf. *Id.* at 155-56, 157 n.5; *see also Cuevas v. United States*, 422 F. App'x 142, 144-45 (3d Cir. 2011) (reiterating the *Tabron* factors).

Here, the *Tabron* factors weigh in favor of appointing counsel to represent Plaintiff. Plaintiff has presented his case in a coherent, knowledgeable manner and will survive Defendants' summary judgment motion. However, Plaintiff will face difficulty in preparing for trial as a *pro se* incarcerated individual. Counsel would be able to assist Plaintiff in resolving any outstanding discovery disputes, such as the existence of cameras that may have captured portions of the incident. *See* Pl. Certif. ¶¶ 18-20 (arguing that Defendants have refused to provide video footage); D.E. 42 (letter from Defendants stating the Department of Corrections is "unable to confirm whether video footages related to the alleged assault or Plaintiff's injuries exist"); *see also Wilson v. United States*, 79 F.4th 312, 320 (3d Cir. 2023) (holding district court erred in granting summary judgment when *pro se* prisoner's ability to pursue conduct discovery was undermined during COVID-19 lockdowns and prisoner continued to maintain that he could obtain expert testimony). Expert testimony is unlikely, but the credibility of Plaintiff, Baltimore, and Franca will be a significant issue at trial. Finally, Plaintiff cannot afford counsel on his own as he is proceeding *in forma pauperis*. D.E. 5.

Accordingly, the Court will direct the Clerk of the Court to identify an attorney from the District's civil *pro bono* panel to represent Plaintiff.

## IV.  CONCLUSION

For the reasons stated above, the Court will **DENY** Defendants' summary judgment motion.  The Court will *sua sponte* appoint counsel to represent Plaintiff for the remainder of this matter.  An appropriate Order accompanies this Opinion.


3/19/2024
Date

Evelyn Padin, U.S.D.J.